UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUISA RAMIREZ,<br><br>         Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION, a Washington corporation; and DOES 1 through 20,<br><br>         Defendants. | Case No.: 24-CV-1197 TWR (LR)<br><br>**ORDER (1) VACATING HEARING, AND (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 44, 45) |

   Presently before the Court is Defendant Costco Wholesale Corporation's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Mot.," ECF No. 44), as well as Plaintiff Luisa Ramirez's Opposition to ("Opp'n," ECF No. 55), Defendant's Reply in Support of ("Reply," ECF No. 59), and Plaintiff's Sur-reply in Opposition to ("Surreply," ECF No. 68) the Motion. Because the Court determines that the Motion is appropriate for resolution on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1), the Court **VACATES** the hearing set for November 13, 2025. (*See* ECF No. 45.) Having carefully considered the Parties' arguments, the record, and the relevant law, the Court **DENIES** Defendant's Motion.

/ / /

/ / /

# BACKGROUND

## I. Undisputed Material Facts

"On March 14, 2023, Plaintiff . . . slipped and fell at the Costco warehouse located in El Centro, California." (ECF No. 66 ("Jt. Stmt.") No. 1.) "Ms. Ramirez's fall was captured on surveillance footage[,]" (*id.* No. 17), which "shows Plaintiff fell at approximately 5:44 p.m." (*Id.* No. 18.) "Plaintiff did not see the substance on the ground before she slipped and fell[,]" (*id.* No. 3); "did not know how long the substance was on the ground before she slipped and fell[,]" (*id.* No. 4; *see also id.* No. 31); and "does not know how the substance got onto the floor." (*Id.* No. 5.) "Costco's Incident Report confirms that Ms. Ramirez slipped on 'what appeared to be water or liquid.'" (*Id.* No. 6.)

"Plaintiff fell near the rotisserie chicken display." (*Id.* No. 2.) "Ms. Ramirez and an eyewitness testified that they believe the liquid [Plaintiff slipped on] was a mixture of water and oil runoff from a rotisserie chicken container." (*See id.* No. 7.) "In 2023, hot rotisserie chickens were packaged in two-piece plastic containers known as 'clamshells.'" (*Id.* No. 9.) "Costco knows that oil or grease can accumulate when hot chicken is packaged in a plastic container." (*Id.* No. 8.) Although Costco "employees[,] including the General Manager and Service Deli Manager[,] did not think the clamshells presented a risk of harm from leaking[,]" (*see id.* No. 11), "Plaintiff's expert has stated that spilling or leakage from 'clamshell' containers when the containers are not properly sealed is a known risk."[1] (*Id.* No. 10.) "General Manager[] Paul Lopez could not say whether employees handling rotisserie chickens were instructed to check for leaks or spillage." (*Id.* No. 13.)

"Costco's policies require all employees to routinely inspect the warehouse on an ongoing basis during their shifts." (*Id.* No. 19.) "Costco employees are required by policy

---

[1] Defendant "object[s] to this fact as lacking foundation and unsubstantiated expert opinion." (*See* Jt. Stmt. at 4:22–23; *see also* Reply at 7–9.) Although Defendant's challenge to Alex Balian's qualification as an expert witness may well succeed—a challenge that, to be clear, the Court does not find necessary to rule on to resolve the instant Motion—the Court ultimately accepts this fact as an undisputed matter of common sense. (*See* ECF No. 55-14.)

to conduct and document daily floor walks / safety inspections of the warehouse every hour between opening and closing hours of the warehouse, in order to discover any unsafe conditions and to repair, replace, or give adequate warning of anything that could be reasonably expected to harm others." (*Id.* No. 20.) "Costco's safety and inspection policies treat the area around the rotisserie chicken display the same as every other area in the store[,]" (*id.* No. 12), and "Costco's floor inspectors are not instructed to exercise extra care in the area around the rotisserie chicken display." (*Id.* No. 14.)

"The Daily Floor-Walk / Safety Inspection report dated March 14, 2023, shows that Costco employee Elizabeth Escobedo performed an hourly safety inspection of the warehouse starting at 4:09 p.m. and concluding at 4:21 p.m., and another immediately thereafter starting at 5:14 p.m. and ending at 5:49 p.m." (*Id.* No. 21.) "Ms. Escobedo walked every single aisle and area of the warehouse and did not record any visible spills." (*Id.* No. 22.) "Ms. Escobedo's [second] floor inspection on the day of the incident included taking and recording temperatures." (*See id.* No. 29.)

"Ms. Escobedo completed a Daily Floor-Walk / Safety Inspection report dated March 14, 2023, which did not include any recorded slipping hazards in the area where Plaintiff fell." (*Id.* No. 23.) When "[a]sked whether she made a practice of inspecting the area around the chicken display for hazards, Ms. Escobedo testified, 'I don't know.'"[2] (*Id.*

---

[2]    Defendant contends that Ms. Escobedo's deposition should be excluded because it is incomplete and "Costco's counsel was not allowed to question Ms. Escobedo to complete the deposition," rendering her testimony "one-sided[] and unreliable." (*See* Reply at 9–10.) It appears that, after Plaintiff's counsel finished his examination of Ms. Escobedo during her deposition, a nine-minute break was taken. (*See* ECF No. 59-1 at 41:13:20.) Once the break ended, Plaintiff's counsel asked Ms. Escobedo whether defense counsel had "call[ed] [her] on the phone during the break[.]" (*See id.* at 41:24–42:2.) Defense counsel objected and instructed Ms. Escobedo not to answer, (*see id.* at 42:3–7); Plaintiff's counsel attempted to call Judge Rodriguez, (*see id.* at 42:22–24); and ultimately Plaintiff's counsel suspended the deposition. (*See id.* at 43:7–12.) Defense counsel indicated that he did have questions for Ms. Escobedo, (*see id.* at 42:19–21), and that he would "like to see the deposition finished today with the exception of that one particular question." (*See id.* at 43:13–17.)

The issue was later raised during an informal discovery conference with Judge Rodriguez. (*See* ECF No. 68-1 ("Bruno Surreply Decl.") ¶ 9.) Judge Rodriguez concluded that Plaintiff's counsel

3

No. 26.) "Ms. Escobedo also said 'I don't know' when asked whether she would have noticed a puddle near the chicken display on March 14, 2023." (*Id.* No. 27.)

"Ms. Escobedo[] testified under oath that she could not remember when she received safety training or any specifics about the safety training she received[,]" (*id.* No. 24), "when she had last received any safety training, and . . . if she had ever been tested on her knowledge." (*Id.* No. 25.) "Plaintiff's expert has stated that Costco's failure to provide ongoing training to its safety inspectors falls below the standard of care."[3] (*Id.* No. 28.)

"There are no posted or verbal warnings given to customers in the area around the rotisserie chicken display." (*Id.* No. 15.) "Costco's liability expert, Brad Rutledge, testified that people who are alert to a potential slip hazard significantly reduce the likelihood of a fall." (*Id.* No. 16.)

---

improperly suspended the deposition. (*See id.*) Unfortunately, Judge Rodriguez did not issue a written order, (*see id.* ¶ 10), and the Parties appear to have different understandings of what was ordered. Plaintiff's counsel believes that he was ordered to pay for a second deposition of Ms. Escobedo, (*see id.* ¶ 9), while defense counsel appears to believe that Plaintiff's counsel was ordered to pay for *and arrange* the second deposition session. Counsel exchanged several emails, (*see id.* ¶¶ 12–13 & ECF Nos. 68-3 ("Surreply Ex. B"), 68-4 ("Surreply Ex. C")), with Plaintiff's counsel ultimately offering before the close of discovery "to renotice Ms. Escobedo's deposition if [defense counsel] would like to provide a date." (*See* Bruno Surreply Decl. ¶ 13 & Surreply Ex. C.) Defense counsel never responded, (*see* Bruno Surreply Decl. ¶ 14), but did email Plaintiff's counsel on July 18, 2025, regarding his intention to move *in limine* to exclude Ms. Escobedo's deposition testimony at trial. (*See id.* ¶ 16 & ECF No. 68-5 ("Surreply Ex. D").)

Ultimately, it appears that both Parties share responsibility for the failure to complete Ms. Escobedo's deposition. Although the Court would be disinclined on this record to sustain Defendant's objection, the Court need not resolve this evidentiary dispute at present because, even if the Court were to preclude Ms. Escobedo's deposition testimony at trial, "to survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003)). Because Plaintiff could conceivably elicit this testimony directly from Ms. Escobedo at trial, the Court declines to disregard it for purposes of summary judgment.

[3] It is unclear to what extent Defendant objects to this fact. (*Compare* ECF No. 66 at 10:4–8 (declining to object to Fact No. 28), *with* ECF No. 66 at 4:22–23 (objecting to Fact No. 10); Reply at 7–9 (objecting to Mr. Balian's expert opinions generally).) Even excluding this fact from the Court's analysis, *see infra* pages 6 through 8, the Court would reach the same conclusion.

## II. Procedural Background

Plaintiff filed her Complaint for Damages and for Personal Injuries and Demand for Jury Trial, asserting two causes of action for negligence and premises liability, on July 12, 2024.  (*See* ECF No. 1.)  Defendant answered on July 30, 2024.  (*See* ECF No. 4.)

The Parties then engaged in discovery, which engendered several disputes that required resolution by the Honorable Lupe Rodriguez, Jr.  (*See generally, e.g.*, ECF Nos. 18, 20, 21, 26, 38, 48; *see also supra* note 2.)  The instant Motion followed on August 7, 2025.  (*See generally* ECF No. 44.)  Briefing of the Motion also proved contentious, necessitating intervention from the undersigned.  (*See generally* ECF No. 64.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment as to a claim or defense or part of a claim or defense.  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Although materiality is determined by substantive law, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  When considering the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The moving party may meet this burden by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.*  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'"

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *see also Anderson*, 477 U.S. at 248. Accordingly, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] upon mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256.

## ANALYSIS

Through the instant Motion, Defendant seeks summary adjudication in its favor as to both of Plaintiff's causes of action for negligence and premises liability. (*See* Mot. at 2; *see also generally* ECF No. 44-5 ("Mem.").) "The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury." *Kesner v. Super. Ct.*, 1 Cal. 5th 1132, 1158 (2016).

"[T]o establish the element of causation in a premises liability claim, a plaintiff must show that the store owner either directly caused the dangerous condition or had actual or constructive knowledge of the dangerous condition." *Alacan v. Target Corp.*, No. CV 14-04564-AB (VBKX), 2015 WL 10945603, at *2 (C.D. Cal. June 26, 2015) (citing *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205–06 (2001)). Plaintiff concedes that she "cannot identify any facts or evidence to support . . . that Costco had actual notice of the dangerous condition [that] caused" her to slip and fall. (*See* Jt. Stmt. No. 30.) The question, therefore, is whether Plaintiff can identify specific facts showing that Costco should have known of the dangerous condition Plaintiff encountered.

Defendant contends that Plaintiff cannot do so, citing both the undisputed fact that a Costco employee, Ms. Escobedo, had inspected the area where Plaintiff fell approximately fifteen minutes before the incident, as well as case law that, generally, "California courts apply a 30-minute threshold for submitting questions of actual notice to a jury – *i.e.*, if there is undisputed evidence that an active inspection of the relevant area occurred less than 30 minutes before the accident, summary judgment in favor of the store owner is appropriate." (*See* Mem. at 2 (quoting *Cardoza v. Target Corp.*, No. CV-17-2232-MWF-RAOX, 2018 WL 3357489, at *3 (C.D. Cal. June 22, 2018), *aff'd*, 765 F. App'x 360 (9th Cir. 2019)).) Plaintiff responds that *Cardoza* does not apply because it "expressly applies only where there is 'undisputed' evidence that an 'active' inspection took place before the incident[,]" whereas "Plaintiff disputes both the thoroughness of Costco's inspection and the adequacy of floor inspector's training to perform a reasonable inspection." (*See* Opp'n at 8 (emphasis in original).) Specifically, Plaintiff points to Ms. Escobedo's deposition testimony in which she could not recall any specifics regarding her floor inspection training and in which she was not sure whether she made a practice of inspecting the area around the rotisserie chickens or would have noticed a puddle on the floor in that area if there had been one. (*See id.* (citing ECF No. 55-7 at 16:8–14, 22:11–15, 23:10–12, 36:11–21, 38:8–10).)

In light of this evidence, the Court finds persuasive *Termendzhyan v. Costco Wholesale Corporation*, No. CV 18-01646-AB (EX), 2019 WL 4570016 (C.D. Cal. July 15, 2019), in which the Honorable André Birotte Jr. denied Costco's motion for summary judgment when the plaintiff had slipped and fallen on the floor of a Costco produce cooler 29 minutes after an inspection during which "no water [had been] found." *See id.* at *1. In that case, the plaintiff's expert opined that "the flooring in the produce cooler [wa]s inherently and foreseeably hazardous" and that "the hourly 15-minute floor-walk inspections [we]re inadequate given the size of the premises and the tasks that must be performed." *See id.* at *3. Judge Birotte concluded that these opinions "raise[d] triable issues of fact as to whether Defendant had notice of the hazardous condition that caused

Plaintiff's injury" because a jury could find "either that the inspections were not reasonable under the circumstances, or that the flooring itself was too hazardous to be placed in a produce cooler." *See id.*

Because Plaintiff introduces evidence calling into question the adequacy of Defendant's training of its employees to conduct floor inspections and the thoroughness of Ms. Escobedo's inspections on March 14, 2023, the Court must conclude, as Judge Birotte did in *Termendzhyan*, that the inspection conducted within the generally applicable thirty-minute threshold "does not foreclose a jury from finding . . . that the inspections were not reasonable under the circumstances." *See* 2019 WL 4570016, at *3. The Court therefore **DENIES** Defendant's Motion.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's Motion for Summary Judgment (ECF No. 44).

**IT IS SO ORDERED.**

Dated: October 30, 2025

_____
Honorable Todd W. Robinson
United States District Judge